IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEE CROUTHERS,

                                           OPINION AND ORDER

                      Plaintiff,

                                           07-cv-655-bbc

         v.

COORDINATOR SHARON K. ZUNKER and
HSU MANAGER BECKY DRESSLER,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is a civil action for injunctive and monetary relief brought under 42 U.S.C. § 1983. Plaintiff Lee Crouthers, a Wisconsin state inmate who suffers from hepatitis C, contends that defendants Sharon Zunker and Becky Dressler violated his Eighth Amendment rights by denying him treatment for this disease. Jurisdiction is present pursuant to 28 U.S.C. § 1331.

        Now before the court are the parties' cross motions for summary judgment. The issues raised by the parties are whether plaintiff has a serious medical need, whether defendants were personally involved in plaintiff's medical care, whether defendants acted with deliberate indifference toward plaintiff's health and whether defendants are entitled to

qualified immunity.

I conclude that plaintiff cannot prevail on his claim that defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. The undisputed facts reveal that defendants' employer, the Wisconsin Department of Corrections, established a hepatitis C treatment policy. Pursuant to this policy, defendants regularly monitored plaintiff's liver enzyme levels but did not offer treatment because his liver enzyme levels never rose high enough to suggest liver damage was occurring. Because treatment for hepatitis C can have debilitating side effects, inmates, like plaintiff, with lower liver enzyme levels were only monitored, not treated.

Plaintiff has failed to adduce evidence that this policy was unreasonable or that defendants violated the policy. Further, plaintiff has pointed to no evidence that postponing treatment for his hepatitis C negatively affected his health. Because the facts do not show that defendants were deliberately indifferent to plaintiff's health, there is no need to consider defendants' other arguments.

Several of plaintiff's proposed findings of fact concern his treatment for kidney stones by prison medical staff. Because that is an issue outside the scope of this case, these proposed facts are irrelevant and will be disregarded. From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

UNDISPUTED FACTS

In 2005, plaintiff Lee Crouthers was an inmate incarcerated at the Stanley Correctional Institution in Stanley, Wisconsin.  In March 2005, plaintiff tested positive for hepatitis C.  Defendant Sharon Zunker is employed by the Wisconsin Department of Corrections as nursing coordinator for the Bureau of Health Services.  Zunker is responsible for coordinating and overseeing health services at adult correctional facilities in Wisconsin. From July 8, 2002 to April 29, 2007, defendant Becky Dressler was employed as the health services unit manager at Stanley Correctional Institute.

A.    Hepatitis C Treatment and Monitoring

Hepatitis C is a viral infection of the liver.  There is no known cure for the disease, although it can sometimes be eradicated through use of ribavirin pills and interferon injections.  However, many people infected with hepatitis C are not given these treatments because of their potentially debilitating side effects.  Hepatitis C is considered chronic when a person has been infected with it for at least six months.

Chronic hepatitis C varies widely in its severity and prognosis.  Some patients may have the disease for many years before developing problems or may never have symptoms of liver damage.  Other patients may develop elevated liver enzyme levels, indicating liver damage.  Other than lifestyle changes such as healthy diet and exercise, there is no known

treatment to slow the progression of liver damage.

Liver enzyme levels are measured by an alanine aminotransferase (ALT) test.  ALT levels in patients with hepatitis C may fluctuate over time for no clear reason; such fluctuation does not necessarily indicate liver damage.  However, patients whose ALT levels consistently increase over a long period of time tend to have more liver disease than patients whose levels fluctuate.

B. Plaintiff's Treatment

At the time plaintiff tested positive for hepatitis C in March 2005, the Wisconsin Department of Corrections had in place a Hepatitis Program Policy and Procedure.  Under this policy, additional blood testing would be performed on hepatitis C patients only if the inmate had certain risk factors or had ALT levels of 60 or greater.  An inmate would be considered for further treatment with ribavirin and interferon only if he twice registered an ALT level of 75 or greater and met other criteria, such as liver biopsy results indicating fibrosis.

When plaintiff tested positive for hepatitis C in March 2005, the laboratory report indicated that plaintiff had an ALT level of 53. This ALT level was below the guidelines set in the Department of Corrections' policy, so plaintiff was not screened further or evaluated for treatment at that time.

4

In January 2006, plaintiff reviewed his medical file and learned he had tested positive for hepatitis C.  On March 2, 2006, plaintiff was examined by Dr. Bruce Gerlinger, who recommended that plaintiff's ALT levels be monitored every four months and ordered that blood tests be done to confirm the diagnosis of hepatitis C and gauge plaintiff's ALT levels. On March 4, 2006, the test results showed that plaintiff had an ALT level of 49.  On April 4, 2006, the blood test confirmed plaintiff's diagnosis of hepatitis C.

On July 6, 2006, Dr. Gerlinger ordered a follow-up ALT test for plaintiff, which showed an ALT level of 38.  On July 11, 2006, David Rock, a nurse practitioner at the prison, ordered that an appointment be made for plaintiff to discuss his condition.  Three days later, plaintiff saw Dr. Jain in the Health Services Unit to review his ALT tests.  Dr. Jain noted that plaintiff was asymptomatic and that his ALT levels were within normal limits.

In August 2006, the Department of Corrections changed its Hepatitis C Program Policy and Procedure.  This new policy lowered the ALT level that a chronic hepatitis C patient had to meet in order to be evaluated for treatment.  Under the new policy, patients with one ALT level equal to or greater than 50 at least 90 days after admission to prison would be evaluated. Inmates whose ALT levels were less than 50 would not be evaluated for treatment, but would have their levels tested every four months.

On August 18, 2006, plaintiff was seen in the health services unit to discuss his concerns about hepatitis C.  At this appointment, he also requested a referral to the

5

University of Wisconsin for a liver biopsy.  On September 13, 2006, nurse-practitioner Rock ordered that a hepatitis C flow sheet be initiated for plaintiff, recommended that plaintiff be immunized against hepatitis A and B and renewed the order to check plaintiff's ALT levels every four months.   Also on September 13, plaintiff was seen in the health services unit to review his hepatitis C diagnosis.  His lab values were reviewed with him and he was given informational handouts.   Plaintiff stated that he was thankful for the information and reported understanding more about hepatitis C.

Over the next year and a half, plaintiff was seen several times in the health services unit at Stanley Correctional Institution.  He was immunized against hepatitis A and B and had his ALT levels tested five times.  His ALT level was 41 in October 2006, 47 in January 2007, 50 in March 2007, 37 in April 2007 and 34 in August 2007.

### C. Plaintiff's Complaints to Department of Corrections Staff

Plaintiff complained several times about the quality of care he was receiving.  In letters dated August 8, 2006 and December 4, 2006, plaintiff complained to defendant Zunker and to the director of the Wisconsin Bureau of Health Services, James Greer, of inadequate care for his hepatitis C .  In responses dated August 14, 2006, and December 4, 2006, Zunker wrote back to plaintiff and explained that not all persons with hepatitis C received treatment, that plaintiff's ALT level was not high enough to warrant treatment and

that his levels were actually declining.  Zunker advised plaintiff to discuss his concerns with defendant Dressler, file an inmate complaint, or submit a request to see a doctor or nurse-practitioner.

In March 2007, plaintiff requested and received copies of his ALT test results.   On March 13, 2007, plaintiff requested an appointment with a physician to discuss his hepatitis C diagnosis and most recent ALT test results.  The next day, prison staff informed plaintiff that he had been referred to a physician.   On April 2, 2007, plaintiff requested an appointment with a physician to discuss hepatitis C-related health problems.  The next day, plaintiff was told he was tentatively scheduled to see a physician on April 11, 2007.   (The parties dispute whether plaintiff submitted written complaints addressed to defendant Dressler in 2006 and 2007.)

On February 27, 2008, plaintiff was transferred to the Wisconsin Secure Prison Facility in Boscobel, Wisconsin.  Plaintiff was seen in that prison's health services unit on March 20, 2008.  Dr. Burton Cox ordered that plaintiff's ALT levels be checked every four months.   On March 26, 2008, plaintiff's ALT levels tested at 34.  On July 23, 2008, his levels registered at 30.

OPINION

A.  Summary Judgment Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party.  Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).  However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor.  Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

Defendants have moved for summary judgment on plaintiff's Eighth Amendment claim.  Therefore, I must view all facts and draw all inferences from those facts in the light most favorable to plaintiff.

## B. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  Thus, the Eighth Amendment requires the

8

government "to provide medical care for those whom it is punishing by incarceration." Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996) (citing Estelle, 429 U.S. at 103).

To show deliberate indifference, a plaintiff must establish that the defendants were "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health.  Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001).  When a prisoner receives some form of medical care, he must show that the care he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition.  Snipes, 95 F.3d at 592.  Mere disagreement with a doctor's medical judgment, inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference.  Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007); Washington v. LaPorte County Sheriff's Dept., 306 F.3d 515, 518 (7th Cir. 2002).

Plaintiff argues that the failure to treat his hepatitis C constituted deliberate indifference to his serious medical needs.  Defendants argue that even if plaintiff's hepatitis C posed a serious medical need, they were not deliberately indifferent because they treated his condition reasonably and in accord with the Department of Corrections' Hepatitis C Program Policy and Procedure.

I agree with defendants.  Plaintiff's hepatitis C was handled in accordance with the Department of Corrections' Hepatitis C Program Policy and Procedure.  Under the policy

9

in place from the time of plaintiff's diagnosis in March 2005 until August 2006, only inmates with ALT levels of 60 or greater were considered for further screening. During this time period, plaintiff's levels tested at 53, 49, and 38. Accordingly, he was not considered for treatment. Under the departmental policy implemented in August 2006, only inmates with ALT levels of 50 or greater were evaluated for further treatment. Plaintiff's ALT levels tested at 41, 47, 50, 37, and 34 during this time period. At best, plaintiff has shown that on one occasion his ALT level met the minimum threshold for defendants to consider whether further treatment was appropriate. Following this test result, plaintiff's ALT levels declined. At no time did the Department of Corrections' policy require that plaintiff be treated.

Plaintiff has adduced no evidence that the treatment outlined in the Department of Corrections' policy is "so blatantly inappropriate as to evidence intentional mistreatment." The policy recommends that patients whose liver enzyme levels are relatively low not be considered for aggressive treatment because treatment for hepatitis C is not always successful and has the potential for debilitating side effects. Only inmates whose liver enzyme levels are sufficiently elevated as to suggest liver damage are further evaluated for treatment.

Further, plaintiff has presented no evidence to suggest that the department's policy of delaying treatment for his hepatitis C has led to further damage to his liver or has decreased his chances of receiving effective treatment if and when tests show that he needs

10

it. In order to show that a delay in treatment amounts to a constitutional violation, plaintiff must adduce some evidence to show that this delay had a detrimental impact on him. Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (no deliberate indifference to inmate's hand injury where inmate failed to show that delay in treatment contributed to his injuries); Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (requiring inmate to place verifying medical evidence in the record to establish that one-hour delay in treatment had detrimental effect). Although plaintiff might prefer to have his hepatitis C treated differently or more quickly than the Department of Corrections' policy recommends, inmates are not entitled to their preferred course of treatment. Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001); Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).

Because I find that defendants did not act with deliberate indifference to plaintiff's serious medical need, I need not consider defendants' additional contentions that they are not liable because they were not personally involved in plaintiff's care and should enjoy qualified immunity.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, dkt. #63, is GRANTED and plaintiff's motion for summary judgment, dkt. #58, is DENIED. The clerk

11

of court is directed to enter judgment for defendants and close this case.

Entered this 4th day of December, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge